| | |
|---|---|
| Randolfo Rivera Sanfeliz y otros<br><br>Recurridos<br><br>v.<br><br>Junta de Directores de Firstbank Corporate por José Menéndez Cortada y otros<br><br>Peticionarios | Certiorari<br><br>2015 TSPR 61<br><br>193 DPR ____ |

Número del Caso:    CC-2013-1052


Fecha: 13 de mayo de 2015


Tribunal de Apelaciones:

        Región Judicial de San Juan


Abogado de la Parte Peticionaria:

        Lcdo. Rubén Rivera-Rosa


Abogado de la Parte Recurrida:

        Lcdo. Mario Prieto Batista




Materia: Corporaciones – Reclamación contra el Banco y sus directivos por despido en alegada violación de contrato; acción ex-contractu y ex-delicto; desestimación de demanda bajo la Regla 10.2 de Procedimiento Civil.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| RANDOLFO RIVERA SANFELIZ Y OTROS<br><br>Recurridos<br><br>v.<br><br>JUNTA DE DIRECTORES DE FIRSTBANK CORPORATE POR JOSÉ MENÉNDEZ CORTADA Y OTROS<br><br>Peticionarios | Núm. **CC-2013-1052** | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado señor FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 13 de mayo de 2015.

Mediante el presente recurso atendemos los méritos de las imputaciones de responsabilidad personal a los miembros de la junta de directores de una corporación, interpuestas por un ex empleado de la institución a causa de su despido, así como las reclamaciones de algunos de sus familiares por supuestos daños derivados de dicho suceso.

**I**

El 26 de mayo de 1998, el Sr. Randolfo Rivera Sanfeliz (señor Rivera) subscribió un contrato de empleo (Contrato) con FirstBank Puerto Rico (FirstBank o el Banco) para ocupar el puesto de Vicepresidente Ejecutivo.

A cambio de sus servicios, FirstBank se comprometió con el señor Rivera a pagarle un salario base mínimo de $200,000 anuales y a concederle, entre otros beneficios, un bono de $50,000 por firmar su Contrato (*signing bonus*) y bonos de productividad de al menos $100,000 por los primeros dos años de empleo. Pactaron, además, un término inicial de cuatro años el cual se extendería automáticamente por términos de un año a menos que, 90 días antes de culminar el año en curso, alguna de las partes le notificara a la otra por escrito su deseo de terminar el acuerdo.

En lo pertinente a la controversia de autos, las partes acordaron que, tanto la Junta de Directores de FirstBank como el señor Rivera, podían dar por terminado el Contrato "con causa" en cualquier momento o, "sin causa", mediante notificación previa de 90 días por escrito.[1] Respecto a lo anterior dispusieron que, del señor Rivera ser despedido "sin causa", éste tendría derecho a una indemnización (*severance payment*) equivalente al pago de cuatro años de su salario base.[2] Asimismo, convinieron que cualquier determinación que tomara el Banco concerniente al Contrato, ya fuese enmendarlo o despedir al señor Rivera, requeriría la aprobación de dos terceras partes de todos los miembros de

---

[1]     Contrato, cláusula 11(a) y (b). Cabe señalar, que el Contrato expresamente define lo que constituye "causa" para ambas partes. Aps. 25-27.

[2]     Contrato, cláusula 11(a). Aps. 25-27.

la Junta de Directores.[3]   Por último estipularon que, de surgir cualquier controversia sobre la interpretación del Contrato, se sometería a un procedimiento de arbitraje.[4]

El Contrato fue objeto de dos enmiendas.  La primera, fechada el 15 de enero de 2009, se circunscribió a limitar la indemnización ("severance") pagadera al señor Rivera en caso de que FirstBank diera por terminado el Contrato. Ello con el propósito de atemperar las cláusulas contractuales concernientes con las disposiciones del *Emergency Economic Stabilization Act of 2008*.

La segunda enmienda, suscrita el 27 de octubre de 2009, surgió como consecuencia de la participación de FirstBank en el *Troubled Asset Relief Program* y el *Capital Purchase Program* del gobierno federal.  Se impusieron unas restricciones temporeras a la compensación, beneficios e indemnización que el señor Rivera tendría derecho a recibir bajo el Contrato, a los efectos de que dichas concesiones se hicieran conforme a las exigencias del *Emergency Economic Stabilization Act of 2008* y el *American Recovery and Reinvestment Act of 2009*.

El 28 de junio de 2010, el señor Rivera fue despedido.[5] Éste reaccionó presentando una Querella ante el Tribunal de Primera Instancia el 23 de agosto de 2010 en

---

[3]    Contrato, cláusula 18.  Ap. 33.

[4]    Contrato, cláusula 22.  Ap. 34.

[5]    A la fecha del despido, el señor Rivera devengaba un salario base de $550,000.

contra de FirstBank al amparo del procedimiento especial de carácter sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 *et seq.* (2004) (**Civil Núm. KPE-2010-3164**). Reclamó los daños económicos y emocionales alegadamente sufridos a consecuencia del cese de su empleo. Sostuvo que su despido fue injustificado en violación a la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185 *et seq.* (2009), y que el Banco actuó en contravención al Contrato suscrito entre ellos.

Luego de varios trámites procesales, FirstBank presentó una moción para detener los procedimientos judiciales y compeler a arbitraje todas las causas de acción esgrimidas en la Querella, apoyándose en la cláusula de arbitraje del Contrato. A pesar de la oposición del señor Rivera, mediante Sentencia de 17 de julio de 2012, el foro primario declaró *Ha Lugar* la solicitud de FirstBank, declarándose sin jurisdicción y ordenando al señor Rivera someter su reclamo a arbitraje.

El 16 de junio de 2011, previo a que se dictara la Sentencia antes mencionada en el caso **Civil Núm. KPE-2010-3164**, el señor Rivera presentó ante el Tribunal de Primera Instancia —junto a su compañera, Zahira Serrano Díaz, sus hijos, Omar E. Rivera Rivera, Mariela Rivera Rivera y Sebastián Rivera Norcisa, y sus hermanos, Luz y Gerant Rivera Sanfeliz (los recurridos)— la reclamación que dio génesis al recurso ante nuestra consideración (**Civil Núm.**

**KAC-2011-0675**). La Demanda fue incoada en contra de los miembros de la Junta de Directores de FirstBank, sus respectivos cónyuges y las correspondientes Sociedades Legales de Gananciales (conjuntamente, los peticionarios).[6]

La primera causa de acción comprende las alegaciones pertinentes al señor Rivera, quien reclamó los daños y perjuicios causados por la alegada negligencia de los peticionarios en el descargo de sus funciones como directores y oficiales de FirstBank. Igualmente, consignó que fue despedido sin que se cumpliera con los requisitos de notificación previa y del voto afirmativo de dos terceras partes de los miembros de la Junta de Directores establecidos en su Contrato, por lo que el despido resultó nulo o, en la alternativa, injustificado. Asimismo, precisó que las dos enmiendas al Contrato eran nulas por haberse adoptado sin el consentimiento de dos terceras partes de la Junta de Directores. Planteó, además, que posterior a su despido, les advirtió por escrito en dos ocasiones a los miembros de la Junta de Directores del incumplimiento con su Contrato.

La segunda causa de acción de la Demanda contiene las reclamaciones del resto de los recurridos, es decir, los hermanos, hijos y la novia del señor Rivera. Éstos alegaron haber padecido daños y angustias mentales al

---

[6] Para ese entonces la Junta de Directores estaba compuesta por la señora Sharee Ann Umpierre Catinchi y los señores José Menéndez Cortada, Aurelio Alemán Bermúdez, Frank Kolodziej Castro, José Rodríguez Perelló, Héctor Nevares La Costa, Fernando Rodríguez Amaro, Jorge L. Díaz Irizarry, José Luis Ferrer Canals y Lawrence Odell.

observar el sufrimiento del señor Rivera, así como las condiciones económicas adversas que le sobrevinieron como resultado de su despido. Como base para su acción, expusieron que los oficiales y directores demandados "son responsables solidarios de los daños […] por las actuaciones y/u omisiones negligentes al no cumplir con sus responsabilidades de forma cabal y efectiva en las funciones que le exigen la posición que ocupan en FirstBank, lo que ocasionaron que se violaran los términos y condiciones del [C]ontrato […]".[7]

El señor Rivera reclamó para sí: $5,000,000 en calidad de daños económicos, $500,000 por salarios dejados de percibir y $1,000,000 en compensación por sus angustias mentales. El resto de los recurridos exigió un total de $6,750,000 como resarcimiento por sus angustias mentales.

Los peticionarios, sin someterse a la jurisdicción del tribunal, solicitaron la desestimación de la Demanda por no haberse incluido a FirstBank como demandado, alegando ser éste parte indispensable para el trámite y resolución del caso. Asimismo, plantearon que la Demanda no aducía una reclamación que justificara la concesión de un remedio. Por último, señalaron que los recurridos carecían de legitimidad para instar una reclamación en contra de la Junta de Directores por el incumplimiento con sus deberes fiduciarios.

---

[7]     Demanda, párrs. 27, 31 y 35, Aps. 50-51.

El tribunal de instancia acogió sus planteamientos y dictó Sentencia el 29 de agosto de 2012 desestimando la Demanda, sin perjuicio, por dejar de exponer una reclamación que justificara la concesión de un remedio. Entendió el foro primario que las alegaciones de la Demanda iban dirigidas únicamente a cuestionar el alegado incumplimiento de los directores con su deber de fiducia y no incluyeron argumentos adicionales o independientes para adjudicarles responsabilidad. Razonó, que solamente los accionistas de FirstBank estaban facultados para alegar, por medio de una acción derivativa, el incumplimiento de los deberes fiduciarios de los directores. Destacó asimismo que, en un pleito de tal naturaleza, FirstBank se consideraba parte indispensable. No obstante, indicó que aun si se permitiera traer a FirstBank al caso, ello no sería suficiente para subsanar el hecho de que los recurridos estaban presentando una acción derivativa sin ser accionistas.

Inconformes, los recurridos presentaron una moción de reconsideración el 26 de septiembre de 2012. Plantearon que no procedía la desestimación porque los directores y oficiales demandados respondían extracontractualmente por los daños y perjuicios causados. Alegaron además que, habiendo la Junta de Directores aprobado y autorizado el Contrato con FirstBank, la misma era "igualmente responsable" del incumplimiento contractual. Solicitaron, además, que se les permitiera unir a FirstBank al pleito.

Advirtieron que, en caso de que existiera conflicto al traer a dicha parte, pues ya el señor Rivera tenía una acción pendiente contra FirstBank por despido injustificado, éste estaría dispuesto a desistir de su causa de acción en el pleito de autos, más no así el resto de los recurridos.

El 31 de octubre de 2012, los peticionarios presentaron una *Oposición a Moción de Reconsideración*. En la misma, reiteraron que la imposición de responsabilidad personal a los directores por incumplimiento de sus deberes fiduciarios únicamente procede en aquellos casos en que éstos deban responderle a la corporación y no a terceros ajenos a ésta. Sostuvieron, además, que traer a FirstBank al pleito no subsanaba la inexistencia de una causa de acción en contra de los miembros de la Junta de Directores.

El 10 de diciembre de 2012, el Tribunal de Primera Instancia emitió una Resolución denegando la solicitud de reconsideración. El foro de instancia entendió que para traer a FirstBank al pleito "habría que enmendar la Demanda y prácticamente comenzar de nuevo el caso, para ahora incluir alegaciones directas en contra [del Banco]".[8] También resolvió que acumular a FirstBank podría crear una indeseable bifurcación o fragmentación de los procedimientos, ya que el señor Rivera tenía otro caso pendiente por los mismos hechos en contra del Banco. En

---

[8] Resolución del Tribunal de Primera Instancia, Ap. 106.

vista de ello, determinó que era improcedente permitirle a los recurridos enmendar su Demanda para añadir a FirstBank como parte demandada. En cuanto a la responsabilidad personal de los miembros de la Junta de Directores, el foro de instancia expresó lo siguiente:

> [E]n el caso particular de establecer responsabilidad a los directores de una corporación, nuestro ordenamiento vigente indica que solamente la negligencia crasa en el desempeño de las obligaciones y deberes de éstos, conllevará responsabilidad. Así, pues, determinamos que de las alegaciones en la *Demanda* no surge que los miembros de la Junta de Directores de FirstBank hayan incurrido en negligencia crasa, mala fe o no hayan desplegado una diligencia razonable. Lo que sí surge con claridad de los hechos alegados en la *Demanda*, es que estamos ante una causa de acción de daños por incumplimiento contractual, la cual solamente puede ser litigada por quienes han sido parte en el [C]ontrato, en este caso el Sr. Rivera Sanfeliz y FirstBank. Por lo tanto, los miembros de la Junta de Directores de FirstBank no responden por los daños contractuales alegados en la *Demanda*. Resolución del Tribunal de Primera Instancia, Aps. 106-107.

Oportunamente, el 15 de enero de 2013, la parte recurrida presentó una petición de *certiorari* ante el Tribunal de Apelaciones, la cual fue acogida como una apelación. Señalaron los recurridos que el foro primario erró al no permitir que se enmendara la Demanda para incluir a FirstBank, a pesar de haber determinado que el Banco era parte indispensable. Asimismo, alegaron que el tribunal de instancia erró al resolver que los miembros de la Junta de Directores no respondían por los daños ocasionados, pues fueron éstos los que violaron el Contrato. Informaron además en su recurso, que el señor

Rivera había iniciado un procedimiento de arbitraje para el reclamo de sus derechos amparado en el Contrato entre FirstBank y él por lo que, si el foro apelativo intermedio resolvía a su favor, el señor Rivera procedería de inmediato a renunciar como demandante en el presente pleito, quedando únicamente sus familiares como demandantes.

Mediante Sentencia de 30 de septiembre de 2013, el Tribunal de Apelaciones revocó el dictamen recurrido. El foro apelativo intermedio entendió que no existía impedimento para permitir la enmienda de la Demanda e incorporar a FirstBank, una parte indispensable, al pleito. En torno a la responsabilidad personal de los miembros de la Junta de Directores, expresó lo siguiente:

> Según citamos anteriormente, el Artículo 4.03 de la Ley 164-2009, supra, dispone que la negligencia crasa en el desempeño de sus labores por parte de los directores podría conllevar responsabilidad. Sin embargo, solo con el beneficio de las solicitudes de desestimación y oposición el tribunal determinó que estos no incurrieron en negligencia crasa ni desplegaron mala fe por lo cual no respondían. Somos de la opinión que mediante dicha expresión, el tribunal prejuzgó los méritos de la reclamación y no era la etapa procesal más idónea para llegar a esa conclusión […]. Sentencia del Tribunal de Apelaciones, pág. 13, Ap. 185.

El 18 de octubre de 2013, los peticionarios sometieron una solicitud de reconsideración, la cual fue declarada *No Ha Lugar* el 25 de octubre de 2013. Inconforme con dicho dictamen, los peticionarios acuden

ante nos mediante el presente recurso de *certiorari* y plantean los siguientes errores:

> Erró el Honorable Tribunal de Apelaciones al no resolver que los demandantes-recurridos carecían de legitimidad activa para instar una acción contra los miembros de la Junta de Directores de FirstBank por violación a sus deberes fiduciarios.

> Erró el Honorable Tribunal de Apelaciones al no resolver que los demandantes-recurridos carecían de una causa de acción directa e independiente contra los miembros de la Junta de Directores de FirstBank en su calidad personal por el despido de Randolfo Rivera.

> Erró el Honorable Tribunal de Apelaciones al resolver que procedía enmendarse la Demanda para incorporar a FirstBank como parte indispensable. No procedía enmendarse la misma, pues aun trayéndose a FirstBank al pleito para subsanar el defecto de falta de acumulación de parte indispensable, los demandantes-recurridos carecían de una causa de acción contra los miembros de la Junta de Directores de FirstBank. Permitir la incorporación del Banco al pleito crearía una fragmentación indebida de las reclamaciones ante foros distintos.

Atendido el recurso, expedimos el auto de *certiorari* solicitado mediante Resolución de 25 de abril de 2014. Contando con la comparecencia de ambas partes, estamos en posición de resolver.

## II

### A. Moción de Desestimación

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 (2010), permite que un demandado solicite al tribunal la desestimación de la demanda en su contra por los siguientes fundamentos: (1) falta de jurisdicción sobre la materia o persona, (2) insuficiencia del

emplazamiento o su diligenciamiento, (3) dejar de exponer una reclamación que justifique la concesión de un remedio y (4) dejar de acumular una parte indispensable. Colón Rivera *et al.* v. ELA, 189 DPR 1033, 1049 (2013); Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920, 935 (2011). Al considerar una moción de desestimación, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante. Colón Rivera *et al.* v. ELA, *supra*; El Día, Inc. v. Mun. de Guaynabo, 187 DPR 811 (2013).

Así pues, para que proceda una moción de desestimación, "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor". Ortiz Matías *et al.* v. Mora Development, 187 DPR 649, 654 (2013). Véanse, además: Colón Rivera *et al.* v. ELA, *supra*; El Día, Inc. v. Mun. de Guaynabo, *supra*.

**B. La Corporación**

Las corporaciones existen en virtud de una ficción jurídica instaurada a través de la Ley General de Corporaciones, la cual les faculta a "la realización o promoción de cualquier negocio o propósito lícito […]". Art. 1.01(b) de la Ley General de Corporaciones, 14 LPRA

sec. 3501(b) (2011).  Su existencia como ente jurídico es independiente de sus accionistas, directores y oficiales. Peguero y otros v. Hernández Pellot, 139 DPR 487, 502 (1995); D.A.Co. v. Alturas Fl. Dev. Corp. y otro, 132 DPR 905, 924 (1993).  Por su propia naturaleza artificial e intangible las corporaciones necesariamente actúan a través de sus empleados y agentes.  Véanse: Gasolinas PR v. Registrador, 155 DPR 652, 665-66 (2001); U.T.I.E.R. v. A.E.E., 149 DPR 498, 510 (1999); Peguero y otros v. Hernández Pellot, supra; Vega v. Adm. Servs. Médicos, 117 DPR 138, 146 (1986).

Con el propósito de viabilizar sus operaciones internas y de este modo adelantar sus objetivos, la Ley de Corporaciones establece unas estructuras llamadas a asegurar el buen funcionamiento de la entidad.  Entre éstas se encuentran la junta de directores y los oficiales.

> [L]a corporación necesita valerse de ciertos órganos, instrumentos o agentes para el despliegue de sus actividades internas y externas.  Los órganos corporativos son constituidos por personas físicas o por grupos de personas a quienes la Ley otorga la autoridad de manifestar y cumplir con la voluntad de la entidad, y desarrollar las actividades jurídicas necesarias para alcanzar los objetivos de la corporación.  Estos órganos son la junta de directores y los oficiales. C.E. Díaz Olivo, Corporaciones, San Juan, Publicaciones Puertorriqueñas, 2005, pág. 76 (escolio omitido).

El esquema corporativo está compuesto de una parte por los accionistas, en calidad de dueños, y de otra parte por la administración interna de la entidad que, a menos que se disponga otra cosa, recae sobre sus directores y

oficiales. Cabe señalar que, a pesar de su condición de propietarios, los accionistas no participan en la dirección de los quehaceres de la corporación. Es decir, no la dirigen ni administran. Como regla general, esta responsabilidad corresponde a la junta de directores seleccionada por los accionistas.[9] Véanse: C.R.T. O'Kelley y R.B. Thompson, Corporations and Other Business Associations, 5ta ed., Nueva York, Aspen Publishers, 2006, págs. 141-142; y Díaz Olivo, op. cit., págs. 76-77 y 101.

El modelo corporativo opera bajo un formato de jerarquía institucional conforme al cual los poderes corporativos se ejercitan bajo la autoridad de un equipo centralizado denominado la junta de directores, mientras que la operación de día a día se le encomienda a sus oficiales. Los directores son responsables de designar un cuerpo de oficiales encargados de operar y manejar los asuntos diarios de la empresa.[10] Véanse: O'Kelley y Thompson, op. cit., págs. 141-142; y Díaz Olivo, op. cit., pág. 101. "En términos sencillos podemos decir que la función principal de la junta de directores es establecer y formular la política corporativa. […] Una vez la junta

---

[9] El Artículo 4.01(a) de la Ley de Corporaciones, 14 LPRA sec. 3561(a) (2011), dispone que "[l]os negocios y asuntos de toda corporación organizada con arreglo a las disposiciones de este subtítulo, serán dirigidos por la junta de directores, salvo cuando otra cosa se disponga en este subtítulo o en el certificado de incorporación".

[10] A esos efectos, el Artículo 4.02(a) de la Ley de Corporaciones, 14 LPRA sec. 3562(a) (2011), reza como sigue:

Toda corporación organizada con arreglo a este subtítulo deberá tener los oficiales según los títulos y deberes que se disponga en los estatutos de la corporación o en una resolución de la junta de directores que no sea inconsistente con dichos estatutos […].

establece la política corporativa, su implantación y el manejo de los asuntos diarios de la empresa se le encomienda a los oficiales". Díaz Olivo, op. cit., págs. 76-77.

A pesar de estas diferentes jerarquías y rangos, se permite que una misma persona opere simultáneamente en todas ellas. Es decir, un accionista puede ocupar posiciones de director y oficial al mismo tiempo. Tampoco la Ley exige un número mínimo de directores, por lo que queda al arbitrio de cada corporación fijarlo de acuerdo a sus necesidades.[11]

### i. Fiducia

Como parte del Derecho corporativo se ha reconocido que los directores y oficiales se encuentran en una relación fiduciaria frente a la corporación y a sus accionistas. Díaz Olivo, op. cit. Véase, además, Epstein v. F. & F. Mortgage Corp., 106 DPR 211 (1977). Esto se debe a que "en ellos se ha depositado una fe y una confianza que deben corresponder con actos en pro de los mejores intereses de la corporación". L.M. Negrón Portillo, Derecho Corporativo Puertorriqueño, 2da ed., 1996, pág. 212.

En nuestro esquema corporativo puertorriqueño, la relación de fiducia que enmarca la conducta de los

---

[11] En lo pertinente, el Artículo 4.01(b) de la Ley de Corporaciones, 14 LPRA sec. 3561 (2011), establece que "[l]a junta de directores consistirá de uno o más miembros, los cuales deberán ser personas naturales".

directores y oficiales está fijada en el Artículo 2.03 de la Ley de Corporaciones, 14 LPRA sec. 3523 (2011), de la siguiente forma:

> La autoridad y los poderes conferidos a […] los directores y oficiales […] se disfrutarán y deberán ejercerse […] por los directores u oficiales, según sea el caso, **en beneficio de los accionistas de la corporación y para la gestión prudente de sus negocios y asuntos, así como para la promoción de sus objetivos y propósitos.** (Énfasis nuestro).

El profesor Díaz Olivo destaca que, dada su condición de "gestores de negocios ajenos", el artículo antes citado le impone a los oficiales y directores la obligación de ejercitar sus poderes teniendo como norte los mejores intereses de la corporación. Díaz Olivo, op. cit., pág. 67.

Igualmente, se desprenden del aludido precepto las tres responsabilidades primordiales que corresponden a los oficiales y directores de una corporación. Éstas son: (1) la obligación de actuar dentro del marco de su autoridad, (2) el deber de diligencia, y (3) el deber de lealtad, que a su vez "aparecen delineadas específicamente en los Artículos 4.03, 4.04 y 4.05 de la ley". Díaz Olivo, op. cit., pág. 67.[12]

En cuanto al deber fiduciario de diligencia, principio medular al caso de autos, el Artículo 4.03 de la

---

[12] Los artículos 4.04 y 4.05 de la Ley de Corporaciones, 14 LPRA secs. 3564 y 3565 (2011), respectivamente, recogen el deber de lealtad, así como las normas asociadas con el conflicto de intereses.

Ley de Corporaciones, 14 LPRA sec. 3563 (2011) (Art. 4.03

de la Ley de Corporaciones), dispone lo siguiente:

> Los directores y oficiales estarán obligados a dedicar a los asuntos de la corporación y al desempeño de sus funciones, la atención y el cuidado que en una posición similar y ante circunstancias análogas desempeñaría un director u oficial responsable y competente al ejercer de buena fe su juicio comercial o su mejor juicio en el caso de las corporaciones sin fines de lucro. **Sólo la negligencia crasa en el desempeño de las <u>obligaciones y deberes antes reseñados</u> conllevará responsabilidad.** (Énfasis nuestro).

El referido artículo establece, por lo tanto, el

estándar de cuidado que rige la conducta de los oficiales

y directores cuando estos atienden los asuntos

corporativos. Se les exige diligencia y competencia en el

descargo de sus funciones, pero únicamente la negligencia

crasa en el cumplimiento de las obligaciones y deberes

inherentes a sus puestos conllevará responsabilidad.[13] De

este modo, se les brinda el espacio necesario a los

directores y oficiales para que conduzcan las operaciones

de la empresa con cierto grado de flexibilidad sin temor a

ser demandados, a la vez que se evita la intervención

---

[13] De un análisis del Art. 4.03 de la Ley de Corporaciones se desprende que el mismo recoge elementos del principio del juicio comercial (*business judgment rule*) desarrollado en el Derecho corporativo americano, el cual libera a los oficiales y directores de responsabilidad frente a la corporación "por actuaciones que no impliquen negligencia crasa, fraude o conflicto de interés". C.E. Díaz Olivo, <u>Corporaciones</u>, San Juan, Publicaciones Puertorriqueñas, 2005, pág. 109. Véase, además, L.M. Negrón Portillo, <u>Derecho Corporativo Puertorriqueño</u>, 2da ed., 1996, pág. 214. Dicha norma "dispone que de existir cualquier fundamento comercial razonable para la decisión de los directores u oficiales, éstos no responderán por meros errores de juicio, aun cuando se produzcan resultados desfavorables para la corporación". Díaz Olivo, <u>op. cit.</u>, pág. 109. El esquema propuesto por esta doctrina está fundamentado en el deber de diligencia exigido "a los directores y oficiales para que actúen con responsabilidad, competencia, de buena fe y razonabilidad, para el beneficio y mejores intereses de la corporación". J.F. Gierbolini Bonilla, <u>La acción derivativa como mecanismo de control y monitoreo en Puerto Rico</u>, 1 U.P.R. Bus. L.J. 81 (2010), pág. 86.

judicial excesiva en las cuestiones corporativas. Díaz Olivo, op. cit., pág. 126.

El criterio de negligencia crasa insertado en la última oración del Art. 4.03 de la Ley de Corporaciones no puede tomarse aislado del resto del precepto como imponiendo un deber general de conducta frente a todos. Más bien, debe interpretarse en el contexto del imperativo de fiducia que rige la relación de los directores y los oficiales frente a la corporación. El deber de diligencia que surge del Art. 4.03 de la Ley de Corporaciones forma parte del concepto amplio de fiducia que viene obligado a acatar los directores y oficiales en virtud de sus cargos dentro del esquema corporativo. Es decir, consigna la obligación específica de llevar a cabo sus cometidos de manera capaz y responsable, pero siempre en función de los intereses de la entidad. Naturalmente, la inobservancia de estos deberes inherentes a sus funciones hacia la corporación pudiera generarles responsabilidad personal a los directores y oficiales. No obstante, esta responsabilidad se producirá exclusivamente de cara a la corporación y únicamente si ésta sufre daños como consecuencia de ese quebrantamiento. Véanse: Negrón Portillo, op. cit., págs. 213-214; y Díaz Olivo, op. cit., pág. 102.

### ii. Acción Derivativa

La acción derivativa es un remedio basado en equidad utilizado "para vindicar los derechos de una corporación, cuando las personas llamadas a hacerlo no lo hacen". J.F. Gierbolini Bonilla, La acción derivativa como mecanismo de control y monitoreo en Puerto Rico, 1 U.P.R. Bus. L.J. 81 (2010), pág. 82. Igualmente, se ha descrito como aquella "que un accionista presenta, no para evitar o remediar un daño, lesión, incumplimiento o abuso hacia él, sino hacia la corporación". Negrón Portillo, op. cit., pág. 428. Como corolario a lo anterior, la propia Ley de Corporaciones exige que en toda acción derivativa se alegue específicamente en la demanda la condición de accionista del demandante.[14]

Se destaca su utilidad como vehículo para cuestionar conducta contraria a los intereses de la corporación por parte de sus directores pero, siempre bajo la premisa de que se están exigiendo derechos de la corporación y no propios del que inicia la acción. Así pues, se ha descrito su propósito de la siguiente manera:

> La Acción Derivativa, (Derivative Suit) es una acción contra los directores de una corporación fundamentándose en que los directores no están tomando decisiones para el beneficio de los

---

[14] Sobre este particular, el Artículo 12.06, 14 LPRA sec. 3786 (2011), dispone lo siguiente:

> En cualquier pleito entablado por un accionista a beneficio de alguna corporación organizada con arreglo a las leyes del Estado Libre Asociado, deberá alegarse en la demanda que el demandante era accionista de la corporación cuando se efectuó la transacción impugnada, o que las acciones le fueron transferidas luego de la transacción por ministerio de ley.

accionistas. Por lo general, quien decide si demanda a nombre de la corporación es la junta de directores, ya que los accionistas delegaron en ellos esa facultad. Si la junta y los oficiales no utilizan los fondos corporativos para el bienestar de los accionistas, es decir, por ejemplo, malversación de fondos o conflicto de intereses, a modo de excepción los accionistas pueden instar una Acción Derivativa, a nombre de la corporación y en contra de la junta de directores, reclamando los daños que estos funcionarios corporativos ocasionaron. Esta acción se fundamenta en la alegación de que no se están administrando los fondos en el mejor interés de los accionistas. Gierbolini Bonilla, *supra*, pág. 82.

Sirve a su vez para vindicar violaciones al deber de fiducia que le deben sus directores y oficiales.

La acción derivativa es una reclamación judicial de una causa de acción de la corporación y la inician los accionistas en ocasiones cuando la propia corporación ha fallado en reclamar sus derechos contra aquellas personas, externas o internas, que le han ocasionado algún daño a la entidad. […] Como la acción derivativa se insta para vindicar algún derecho de la corporación, cualquier recobro que se logre pertenece a ésta. […] **Los pleitos de naturaleza derivativa son básicamente pleitos fundamentados en violaciones a los deberes fiduciarios de lealtad y diligencia por parte de los administradores de la corporación.** Díaz Olivo, op. cit., págs. 276-277 (énfasis nuestro y escolios omitidos).

A base de lo anterior, es necesario concluir que un no-accionista de la corporación carece de legitimación para instar una acción derivativa dirigida a atender la alegada violación de deberes fiduciarios propios de la corporación. Véase Schoon v. Smith, 953 A.2d 196 (Del. 2008). En ese caso, el Tribunal Supremo del Estado de Delaware resolvió que un director no-accionista no tiene legitimación para presentar una acción derivativa por la violación de sus compañeros directores a sus deberes fiduciarios. De igual forma, un no-accionista no posee

legitimación para presentar una acción directa en contra de los directores y oficiales de una corporación por violación de sus deberes fiduciarios para con ésta. Véanse: Omnicare, Inc. v. NCS Healthcare, Inc., 809 A.2d 1163, 1169 (Del. Ch. 2002) ("[U]nder established Delaware law, a breach of fiduciary duty claim must be based on an actual, existing fiduciary relationship between the plaintiff and the defendants at the time of the alleged breach. […] [T]he court declines to permit an entity that could not sue in its own right to sue directors for breach of a fiduciary duty owed to others"); Prudential-Bache Sec., Inc. v. Franz Mfg. Co., 531 A.2d 953, 955 (Del. Super. 1987) ("[W]hile […] shareholders or the corporation itself may have a right of action against [the director] for breach of his fiduciary duties, [plaintiff], as a mere creditor, is without standing to assert such a claim").[15]

## C. Acción *Ex Contractu y Ex Delicto*

Como es sabido, la responsabilidad contractual se basa "en el quebrantamiento de un deber que surge de un contrato expreso o implícito". Soc. de Gananciales v. Vélez & Asoc., 145 DPR 508, 521 (1998). A través de las acciones *ex contractu* se vindican los daños acaecidos como consecuencia de la inobservancia de obligaciones

---

[15]    Anteriormente hemos expresado que en la medida en que la normativa del Derecho de corporaciones de Delaware "sea persuasiva e ilustradora, y se acople a nuestra realidad, la acogeremos". Lloréns *et al.* v. Arribas *et al.*, 184 DPR 32, 51 esc. 41 (2011). Véanse, además: Herger *et al.* v. Calidad Vida Vecinal, 190 DPR 1007 (2014); D.A.Co. v. Alturas Fl. Dev. Corp. y otro, 132 DPR 905 (1993).

previamente pactadas. Implícito en este axioma es "que al daño le preceda una relación jurídica entre las partes concernidas". Maderas Tratadas v. Sun Alliance *et al.*, 185 DPR 880, 909 (2012). En otras palabras, sin contrato no hay daño reclamable bajo este supuesto.

En Muñiz-Olivari v. Stiefel Labs., 174 DPR 813 (2008), resolvimos que, ya que el contrato regula la relación entre las partes, las acciones *ex contractu* sólo pueden ser ejercitadas por una parte contratante en contra de la otra. "Por lo tanto, un tercero extraño a una relación contractual no está legitimado para exigir —al amparo del Art. 1054— el resarcimiento de los daños sufridos a raíz del incumplimiento de la obligación contractual". Íd., pág. 822.

Por su parte, el Artículo 1802 del Código Civil, 31 LPRA sec. 5141 (1990), dispone que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". Este tipo de acción, denominada *ex delicto*, consigna el resarcimiento de los daños ocurridos como consecuencia del quebrantamiento del principio general de convivencia social que supone no causar daño a los demás. A diferencia de la situación *ex contractu*, la responsabilidad a tenor del Artículo 1802 del Código Civil, *supra,* surge precisamente como resultado del daño sin que haya mediado relación jurídica previa.

## III

Expuesta la normativa aplicable al caso, pasamos a resolver la controversia ante nuestra consideración.

Según indicamos anteriormente, los recurridos plantean que los peticionarios faltaron a sus obligaciones y deberes fiduciarios por la supuesta negligencia en el ejercicio de sus funciones como directores y oficiales de FirstBank, al permitir que el Banco contraviniera las disposiciones del contrato de empleo del señor Rivera y no rectificar esas infracciones.[16]

De un examen integral de la Demanda surge que la reclamación de los recurridos en contra de los miembros de la Junta de Directores concierne, en síntesis, a asuntos de estricta naturaleza contractual y fiduciaria.[17]

Primeramente, las alegaciones tienen todas un mismo hilo conductor: el Contrato. Son las obligaciones, según consignadas en el pacto laboral acordado entre el señor Rivera, como empleado, y FirstBank, en calidad de patrono, las que dan base a la reclamación. Éstas, a su vez, se

---

[16]  La Demanda del señor Rivera y el resto de los recurridos indica que, a pesar de que "el principal oficial ejecutivo de FirstBank y sus directores [tenían] el deber de velar por el cumplimiento de las obligaciones del Banco y de atender oportuna y adecuadamente cualquier violación cometida a esos efectos", éstos "permitieron que FirstBank violara [su] contrato de empleo […]". Demanda, introducción y párr. 15.

[17]  Los siguientes argumentos presentados por los recurridos confirman el enfoque contractual y fiduciario del litigio:

En el caso de autos, los demandantes-recurridos instaron acción contra la Junta de Directores de FirstBank en su carácter oficial y personal, por el **incumplimiento craso en el descargo de sus funciones al permitir** intencional y negligentemente, con sus actos u omisiones, **que se violara el contrato de empleo** suscrito entre las partes […]. Alegato en oposición a *certiorari*, págs. 7-8 (énfasis nuestro).

reducen a dos condiciones específicas. El voto de dos terceras partes de la Junta de Directores como requisito para: (1) enmendar los términos del acuerdo de empleo, y (2) prescindir de los servicios del señor Rivera. A través de su Demanda, los recurridos armaron todo un esquema de responsabilidad fundado en estas dos premisas las cuales, a su vez, convergen con el deber de fiducia con el Banco que recae sobre los individuos que componen la Junta de Directores.

Los recurridos apoyan su reclamo en el alegado incumplimiento de FirstBank con los términos del contrato de empleo en cuestión, a base de lo cual aducen que los miembros de la Junta de Directores incurrieron en responsabilidad personal al no detener y/o corregir las infracciones supuestamente cometidas por el Banco. No existe controversia de que las únicas partes contratantes en este caso lo son el señor Rivera y FirstBank. A la luz del Derecho aplicable, es el Banco, por lo tanto, quien viene forzado a responder por cualquier violación a esas obligaciones contraídas. Como bien expresara el tribunal de instancia, los miembros de la Junta de Directores no están obligados en su carácter personal por el alegado incumplimiento contractual.

Recordemos que toda corporación "es un organismo artificial, indivisible, intangible, existente solamente en contemplación a la ley […] [y] por razón de su apariencia intangible, todos sus actos han de realizarse

en su nombre corporativo por conducto de sus agentes […]". <u>Sabalier v. Iglesias</u>, 34 DPR 352, 355 (1925). Es decir, de haberse violado el Contrato, dicho incumplimiento sería atribuible únicamente a FirstBank, al actuar por medio de sus oficiales y directores.

Lo anterior resulta cónsono con lo reseñado previamente sobre las condiciones inherentes a la naturaleza de las *acciones ex contractu.* Es decir, en este caso la responsabilidad está precedida y tiene como base el acuerdo de trabajo del señor Rivera. Las violaciones reseñadas surgen precisamente como resultado del alegado quebrantamiento de deberes a los cuales se ataron exclusivamente el señor Rivera y el Banco. Los miembros de la Junta de Directores, en su capacidad personal, no formaron parte de ese Contrato, por lo cual no pueden ser llamados a responder por las infracciones aducidas en la Demanda.

Por otro lado, las imputaciones en este recurso giran en torno al supuesto incumplimiento de los peticionarios con sus obligaciones en calidad de directores y oficiales de la corporación, lo cual se traduce esencialmente a su deber de fiducia. Notamos que, aparte de referencias generalizadas y conclusorias a una alegada responsabilidad extracontractual, no aparecen plasmadas en la Demanda actuaciones y/u omisiones de los directores y oficiales demandados que puedan dar base a una reclamación bajo el Artículo 1802 del Código Civil, *supra*. Por el contrario,

la propia Demanda le atribuye, tanto a Aurelio Alemán Bermúdez como a Lawrence Odell, violar "sus deberes fiduciarios",[18] y a la Junta de Directores el "omitir cumplir con su deber dentro del curso de sus responsabilidades y deberes […]".[19]

Según expusiéramos anteriormente, el Banco es el titular exclusivo del derecho a exigir la observancia del deber de fiducia de sus directores. Por esta razón es éste, o sus accionistas mediante un proceso de naturaleza derivativa, los únicos debidamente legitimados a proseguir una causa de acción basada en el incumplimiento de dicha obligación. Al no ser accionistas de la corporación, ni representarla de manera alguna, los recurridos no están facultados para incoar una reclamación por el alegado quebrantamiento del deber fiduciario que recae, como cuestión de Derecho, sobre los miembros de la Junta de Directores para con el Banco.

Por último, resulta necesario destacar que, al emitir su determinación, el tribunal apelativo intermedio erróneamente le otorgó legitimación a los recurridos para instar una reclamación utilizando como fundamento el Art. 4.03 de la Ley de Corporaciones. Sin embargo, conforme apuntamos anteriormente, esta disposición estatutaria no provee una causa de acción habilitando a cualquier persona a demandar a los directores u oficiales de una corporación

---

[18]    Demanda, párrs. 17-18.

[19]    Demanda, párr. 19.

por alegada negligencia crasa en el cumplimiento con sus deberes fiduciarios. Debido a que el deber de fiducia lo tienen los directores y oficiales ante la corporación en virtud del puesto que ocupan, corresponde únicamente a la propia corporación o, en su defecto, a sus accionistas por vía de una acción derivativa, el reclamarlos.

En resumen, aun tomando como ciertos todos los hechos debidamente expuestos en la Demanda e interpretándolos de la manera más liberalmente posible a favor de los recurridos, no podemos deducir que éstos hayan presentado una reclamación que justifique la concesión de un remedio.[20] Procede, por lo tanto, la desestimación de la Demanda conforme establece la Regla 10.2 de Procedimiento Civil, *supra*.

**IV**

A base de lo anteriormente indicado, se revoca el dictamen emitido por el Tribunal de Apelaciones y se reinstala la Sentencia dictada por el Tribunal de Primera Instancia.

Se dictará Sentencia de conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

---

[20] En vista de nuestra determinación, no es necesario atender el resto de los errores aducidos por los peticionarios en su recurso atinentes a la ausencia de FirstBank como parte indispensable en el pleito, así como la viabilidad de enmendar la Demanda para incluirlo como demandado.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

RANDOLFO RIVERA SANFELIZ Y
OTROS

Recurridos

v.

JUNTA DE DIRECTORES DE
FIRSTBANK CORPORATE POR
JOSÉ MENÉNDEZ CORTADA Y
OTROS

Peticionarios

*Certiorari*

**Núm.** CC-2013-1052

SENTENCIA

En San Juan, Puerto Rico, 13 de mayo de 2015.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca el dictamen emitido por el Tribunal de Apelaciones y se reinstala la Sentencia dictada por el Tribunal de Primera Instancia.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente con opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| RANDOLFO RIVERA SANFELIZ Y OTROS<br><br><br>Recurridos<br><br><br>v.<br><br><br>JUNTA DE DIRECTORES DE FIRSTBANK CORPORATE POR JOSÉ MENÉNDEZ CORTADA Y OTROS<br><br><br>Peticionarios | CC-2013-1052 |

Opinión Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 13 de mayo de 2015

Disiento de la determinación de este Tribunal de adentrarse a discutir asuntos relacionados con el contrato suscrito entre las partes, habida cuenta de que éste contiene una cláusula de arbitraje cuya validez no ha sido cuestionada. Al así proceder, se aparta de la norma que este Tribunal recientemente reafirmó en *H.R., Inc. v. Vissepó & Diez Const. Corp. et al.*, 190 D.P.R. 597 (2014), que exige que se agoten los remedios contractuales antes de acudir a los tribunales. Lo que procedía, en estricto

Derecho, era revocar al Tribunal de Apelaciones y desestimar la demanda instada debido a que, como cuestión de umbral, el Tribunal de Primera Instancia, y nosotros, estamos impedidos de atenderla. Veamos.


I.

La Opinión Mayoritaria resume los hechos pertinentes a la controversia, por lo cual me limito a destacar aquellos que entiendo esenciales para la resolución de ésta. En primer lugar, es preciso enfatizar que es la relación contractual entre el Sr. Randolfo Rivera Sanfeliz, como empleado, y FirstBank Puerto Rico, como patrono, la que condiciona y enmarca la controversia en este caso. Mediante contrato suscrito el 26 de mayo de 1998, las partes acordaron los términos y las condiciones que regirían su relación laboral. Asimismo, y por virtud de la cláusula veintidós (22) del contrato, las partes contratantes pactaron que toda controversia que surgiera en torno a la interpretación del mismo se sometería ante la consideración de tres árbitros nombrados por la Asociación Americana de Arbitraje (AAA).[21] La redacción clara e

---

[21] La cláusula veintidós (22) del contrato dispone lo siguiente: **"Arbitration.** Any controversy as to the interpretation of this contract must be submitted before three (3) arbitrators to be appointed by the American Arbitration Association ("AAA"). The rules and regulations of the AAA shall govern the procedures of said arbitration. The award of a majority of arbitrators shall be binding and final on the parties".

inequívoca de la cláusula de arbitraje destaca su carácter abarcador.

Posteriormente, el 23 de agosto de 2010, el señor Rivera Sanfeliz fue despedido. En consecuencia, éste presentó una querella en contra de FirstBank sobre despido injustificado, incumplimiento contractual y daños económicos y emocionales, presuntamente, sufridos como consecuencia del despido.[22] Sometida la controversia ante el Tribunal de Primera Instancia, y luego de varios incidentes procesales, éste se declaró sin jurisdicción para atenderla y, en virtud de la cláusula de arbitraje incorporada al contrato, ordenó al señor Rivera Sanfeliz a presentar sus reclamos ante el foro apropiado, conforme éste había acordado.

No obstante, la desestimación de esta primera acción no puso fin a los a reclamos entre las partes implicadas. Ello, pues, posterior a la presentación de la Querella, pero previo a que el foro primario emitiera su sentencia paralizando los procedimientos, el señor Rivera Sanfeliz presentó una demanda ante el Tribunal de Primera Instancia; esta vez, en conjunto con sus hijos, hermanos y pareja consensual. Contrario a la primera causa de acción, dirigió la demanda en contra de los miembros de la Junta de Directores de FirstBank en su capacidad personal, sus respectivos cónyuges y las correspondientes Sociedades

---

[22] La Querella se presentó al amparo del procedimiento sumario que dispone la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. Sec. 3118 et seq.

Legales de Gananciales. En ésta, el señor Rivera Sanfeliz, sus hijos, sus hermanos y su pareja consensual alegaron que los miembros de la Junta fueron negligentes en el descargo de sus funciones como oficiales de FirstBank y que, por tanto, sus acciones y omisiones permitieron que FirstBank violara el contrato, lo cual les causó daños.

Luego de unos incidentes procesales, el Tribunal de Primera Instancia desestimó la demanda, sin perjuicio, por dejar de exponer una reclamación que justificara la concesión de un remedio. No obstante, el Tribunal de Apelaciones revocó, por lo que los miembros de la Junta recurrieron ante este Tribunal.

## II.

Como sabemos, las partes de un contrato pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstos no sean contrarios a las leyes, a la moral ni al orden público. 31 L.P.R.A. Sec. 3372. De otro lado, la Ley Núm. 376 de 8 de mayo de 1951, dispone lo siguiente:

> [d]os o más partes podrán convenir por escrito en someter a arbitraje […] cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro sugiere entre ellos de dicho acuerdo o en relación con el mismo. Tal convenio será válido, exigible e irrevocable salvo por los fundamentos que existieren en derecho para la revocación de cualquier convenio. 32 L.P.R.A. Sec. 3201.

Según hemos expresado, esta ley concretiza una fuerte política a favor del arbitraje que exige que toda duda sobre la existencia o no de la obligación de arbitrar se resuelva a su favor. *U.C.P.R. v. Triangle Engineering Corp.*, 136 D.P.R. 133, 141-42 (1994). Ello, evidentemente, siempre y cuando el acuerdo haya sido pactado libremente y no surja un fundamento que justifique la modificación o anulación del mismo. Véase, por ejemplo, *Martinez Marrero v. Gonzalez Droz*, 180 D.P.R. 579 (2011).

Conforme a lo anterior, este Tribunal recientemente reafirmó que "las partes que voluntariamente se someten a un procedimiento de arbitraje deben agotar los remedios contractuales antes de acudir a los tribunales, salvo que exista justa causa para obviarlos". *H.R., Inc. v. Vissepó & Diez Const. Corp. et al.*, 190 D.P.R. 597, 606 (2014). Por tanto, cuando la adjudicación de una causa de acción necesariamente requiere que el tribunal dilucide un asunto contractual que, a su vez, está sujeto a un acuerdo de arbitraje válido y exigible, lo propio es que el tribunal paralice los procedimientos y se abstenga de evaluar los méritos de la controversia. *Triangle Engineering Corp.*, 136 D.P.R. en la pág. 142.

### III.

Al examinar someramente los fundamentos de las reclamaciones incluidas en la demanda, surge con meridiana claridad que su presentación no es más que un intento por parte de los recurridos de eludir la obligación previamente

contraída por el señor Rivera Sanfeliz de someter toda reclamación en torno a la interpretación del contrato a un proceso de arbitraje. En consecución de ello, los recurridos procuraron no reproducir los reclamos de la primera demanda y, además, incorporaron una nueva causa de acción. No obstante, como acertadamente señala la Opinión Mayoritaria, "las alegaciones [de la demanda] tienen todas un mismo hilo conductor: el Contrato. Son las obligaciones, según consignadas en el pacto laboral acordado entre el señor Rivera como empleado, y FirstBank, en calidad de patrono, las que dan base a la reclamación". *Opinión Mayoritaria*, en la pág. 23.[23]

Concretamente, los recurridos reclaman que los peticionarios, como miembros de la Junta, tenían un deber legal de actuar -traducido al ámbito corporativo en un deber fiduciario de diligencia-, y que ellos incumplieron con este deber al no actuar para prevenir que FirstBank violara el contrato. Ello, según los recurridos, le causó daños no tan solo al señor Rivera Sanfeliz, sino también a sus hijos, hermanos y pareja consensual. En otras palabras, en la demanda, según sus propios términos, se

---

[23] Cabe señalar, que por ser FirstBank la otra parte obligada por el contrato, es ésta la única que ha de responder directamente por cualquier violación al mismo. Sin embargo, su inclusión en el litigio como parte indispensable no subsanaría las deficiencias procesales de la demanda, sino más bien activaría la cláusula de arbitraje incorporada al contrato. Ello pone en mayor relieve que la presentación de la demanda fue un subterfugio dirigido a evadir la obligatoriedad de arbitrar todo reclamo relacionado al contrato.

alega que determinadas omisiones por parte de los peticionarios resultaron en, es decir constituyen la causa legal de, un incumplimiento contractual que repercutió en daños para los recurridos. Evidentemente, y a pesar de que los recurridos instaron la demanda al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. Sec. 5141, la determinación de si hubo o no un incumplimiento contractual es medular para la adjudicación de la misma. Ello, pues ante la ausencia de un incumplimiento contractual, se torna innecesario evaluar si los peticionarios incurrieron en la negligencia que los recurridos le imputan. Por tanto, en el orden de análisis, un tribunal estaría obligado a, en primera instancia, dilucidar si en efecto hubo el incumplimiento contractual alegado.

Sin embargo, y como ya hemos visto, el contrato remite, con carácter obligatorio, toda controversia en torno a su interpretación a un proceso de arbitraje. Si bien la Opinión Mayoritaria expresamente reconoce que las causas de acción de los recurridos necesariamente implican la interpretación del contrato y que, por consecuencia, requieren que el tribunal adjudicador dilucide si los términos del mismo se cumplieron, falla al no atribuirle la importancia que ello conlleva. Reconocer que el contrato constituye la base de todas las reclamaciones exige que concluyamos que el Tribunal de Primera Instancia debió abstenerse de entrar en los méritos de la controversia por

imperativo de la cláusula de arbitraje, al igual que nosotros.

La Opinión Mayoritaria, hace todo lo contario, y realiza precisamente ese análisis. Ello la lleva a concluir que los recurridos presentaron acciones de naturaleza contractual y fiduciaria que no tenían legitimación para reclamar, por lo que procede desestimar la demanda al amparo de la Regla 10.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. V. R.10.2, en tanto ésta deja de exponer una reclamación que justifique la concesión de un remedio. Para llegar a esa conclusión, sin embargo, la Opinión Mayoritaria confunde cuál es el análisis apropiado y adjudica, impropia e innecesariamente, reclamaciones que deben dilucidarse primero en el proceso de arbitraje.[24]

El señor Rivera Sanfeliz no ha alegado que la cláusula de arbitraje del contrato fue producto de un consentimiento viciado o que existe un fundamento en Derecho que justifique su modificación o anulación. Tampoco ha planteado la existencia de justa causa que le exima de tener que agotar los remedios contractuales. Consiguientemente, debemos concluir que la obligación de

---

[24] Es menester señalar, que el hecho de que estemos ante una moción de desestimación bajo la Regla 10.2 de las de Procedimiento Civil no altera la conclusión que proponemos, habida cuenta de que, como cuestión de umbral, los tribunales están obligados a determinar si poseen autoridad para adjudicar las alegaciones contenidas en una demanda. Cuando no la poseen, se torna innecesario examinarlas de la manera que lo hace la Opinión Mayoritaria.

arbitrar todo asunto relacionado con el contrato es válida y exigible. Por las razones expuestas anteriormente, ello, como cuestión de umbral, dispone de la controversia en esta etapa. Por tal razón, el Tribunal de Primera Instancia debió abstenerse de atender las alegaciones contenidas en la demanda.

Por entender que la Opinión Mayoritaria incide al entrar en los méritos de la controversia, disiento.


                                    Anabelle Rodríguez Rodríguez
                                          Juez Asociada